# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| LANDON WEAVER | CIVIL ACTION NO. 22-44 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| LOUISIANA BUREAU OF INVESTIGATION, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

In this § 1983 lawsuit, four Defendants—the Louisiana Bureau of Investigation ("LBI"), the Bossier Parish Sherriff's Office ("BSO"), Special Agent Grady Kight ("Kight"), and Detective Erin Tindall ("Tindall")—move to dismiss[1] Plaintiff Landon Weaver's ("Weaver") complaint. For the reasons outlined below, LBI's motion is **GRANTED**. BSO's, Kight's, and Tindall's motions are **DENIED without prejudice to the right to refile**. The Court will allow Weaver to amend his complaint and reassert his claims against BSO, Kight, and Tindall.

## BACKGROUND

Special Agent Kight, Detective Tindall, and two other unnamed officers executed a no-knock warrant at Weaver's home in Bossier City, Louisiana.[2] After entering his house with a battering ram, Weaver says the officers brandished pistols and began securing the premises.[3] Weaver was not a suspect in this operation, as the officers sought another individual at Weaver's residence believed to possess child pornography. Even still, once

---

[1] Record Documents 19, 24 & 27.
[2] Record Document 1 at 4.
[3] *Id.*

Weaver was in view, the officers restrained him by "push[ing]" his face to the floor, pressing their knees into his back and ribs, and cuffing his arms behind his back.[4]

Weaver claims this force aggravated several preexisting conditions, causing him "grave bodily" and psychological "harm."[5] Prior to the raid, Weaver says he was in the process of healing from a nose surgery he underwent the day before.[6] He also states that he suffers from right shoulder pain and an anxiety disorder from his time in the military.[7] According to the complaint, Weaver "believed" that the officers involved in the search knew of these medical problems but did nothing to curb or limit their use of force.[8]

Citing the officers' conduct, Weaver brings this lawsuit under 42 U.S.C § 1983 against Kight, Tindall, LBI, and BSO. Among his federal claims, Weaver alleges that Kight and Tindall violated his Fourth Amendment rights by using excessive force. He also asserts that BSO and LBI are liable for failing to train their employees and maintaining unlawful policies that encourage unconstitutional behavior. As for his state-law claims, Weaver seeks to recover against Kight and Tindall for battery, assault, and negligence; he pursues direct negligence claims against BSO and LBI for their failure to train and supervise their employees.

Each defendant, in response, moved to dismiss Weaver's lawsuit, but Weaver never filed an opposition. Though Weaver made no effort to defend his complaint, the Court will not grant Defendants' motions on that basis alone. The Fifth Circuit approaches "the

---

[4] *Id.* at 6–7.
[5] *Id.* at 4–5.
[6] *Id.* at 3–4.
[7] *Id.* at 4–5.
[8] *Id.* at 7.

automatic grant of a dispositive motion . . . based solely on a litigant's failure to comply with a local rule, with considerable aversion." *Webb v. Morella*, 457 F. App'x 448, 452 (5th Cir. 2012). For this reason, the Court will consider the merits of Defendants' unopposed motions below.

## ANALYSIS

### I. Lack of Subject-Matter Jurisdiction

The first motion, filed by LBI, challenges this Court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A case is properly dismissed under this Rule "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The question raised in this motion is whether the Court can exercise jurisdiction over LBI.

The answer is no. "States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution." *Alden v. Maine*, 527 U.S. 706, 713 (1999). This principle is made explicit in the Eleventh Amendment, which bars suits brought by a citizen against a state unless that state consents to the suit or Congress says otherwise. U.S. Const. amend. XI; *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002). Here, Louisiana has not given its consent to be sued in federal courts. It has, on the contrary, refused to waive its Eleventh Amendment immunity by statute. *See* La. Rev. Stat. § 13:5106(A) ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court.").

This protection from suit, or "sovereign immunity," also extends to lawsuits against Louisiana's "agenc[ies] or other political entit[ies] . . . deemed the 'alter ego' or an 'arm' of the State." *Vogt*, 294 F.3d at 688–89 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). In this case, Weaver himself acknowledges that LBI is a division of the Louisiana Department of Justice ("LADOJ"), a state agency immune from suit in federal court. *Delta Fuel Co. v. Maxwell*, 485 F. App'x 685, 687 (5th Cir. 2012) ("[T]he Louisiana Department of Justice, a state agency, was not a 'person' for purposes of § 1983 . . . it was an arm of the state entitled to Eleventh Amendment sovereign immunity."); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that state agencies are protected from § 1983 lawsuits by the Eleventh Amendment). That means LBI is likewise entitled to sovereign immunity. LBI's motion is therefore **GRANTED**, and Weaver's claims against LBI are **dismissed without prejudice** for lack of subject-matter jurisdiction.

## II. Failure to State a Claim

The Court now turns to the motions filed by the remaining Defendants—Kight, Tindall, and BSO—who assert that Weaver's complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (internal citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all of the factual allegations in the complaint in determining whether a plaintiff has stated a plausible claim. *See Twombly*, 550 U.S. at 555; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79. A court may dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79. A court does not evaluate a plaintiff's likelihood for success but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).

### a. Excessive Force

Weaver's complaint first challenges Kight's and Tindall's allegedly unconstitutional conduct under 42 U.S.C. § 1983. That statute provides a cause of action against anyone acting under the color of state law who "subjects" a person or "causes [a person] to be subjected . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws." 42 U.S.C. § 1983. Since Congress adopted § 1983, it has become the primary civil remedy for enforcing federal constitutional and statutory rights. Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law-Substance & Procedure* § 19:13 (May 2021).

In some circumstances, however, state actors are immune from § 1983 lawsuits and other legal challenges under the doctrine of qualified immunity. Qualified immunity shields government officials from liability for claims against them in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Though the officers here raise qualified immunity in their motion to dismiss, addressing that defense at the outset may prove premature. As a threshold matter, courts must first "determine whether the plaintiff has 'filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018) (quoting *Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir. 2016)). "Only after the regular pleading requirement is satisfied" should courts proceed with the qualified immunity analysis. *Id.*

With that in mind, the Court will first consider whether Weaver's complaint states a plausible claim for relief.[9] The basis for this lawsuit is an alleged Fourth Amendment violation. The Fourth Amendment safeguards "the right of the people to be secure in their persons" and prohibits unreasonable searches and seizures. *Torres v. Madrid*, 141 S. Ct.

---

[9] As noted below, even with Weaver's specific reference to Kight and Tindall, he never distinguishes their conduct from one another or the other two officers at his home on the day of the search.

989, 993 (2021) (quoting U.S. Const. amend. IV). Though this case involves an unannounced search, Weaver does not allege that the officers lacked the right to raid his home; Weaver asserts that Kight and Tindall applied excessive force as they restrained him, making their conduct an unreasonable seizure under the Fourth Amendment. To succeed on an excessive force claim, a plaintiff must show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)).

First, there must be an injury. Although it need not be significant or severe, it must be more than *de minimis*. *Freeman*, 483 F.3d at 416. But "as long as a plaintiff has suffered 'some injury,' even relatively insignificant [] and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013). In addressing this first element, Weaver says the officers' conduct aggravated three of his preexisting medical conditions. The first of these ailments involved unhealed wounds from a nose surgery Weaver had the day before the raid. Because the officers forced his "surgically repaired nose and face down onto the floor," Weaver suggests they injured his nose further, requiring additional surgical repair.[10] The second of Weaver's preexisting conditions was a shoulder injury that limited the mobility of his right arm. As the officers restrained Weaver's hands behind his back, Weaver says they aggravated his ailing shoulder, causing severe pain and decreased mobility. The third condition was psychological. Weaver says he is a military veteran with

---

[10] Record Document 1 at 5.

7

post-traumatic stress disorder ("PTSD"); he contends the officers' aggressive actions worsened his PTSD symptoms, which materialized in recurring nightmares and severe anxiety. Altogether, Weaver asserts that the officers' conduct caused "great bodily" and psychological "harm."[11] Accepted as true, these pleadings meet the "some injury" threshold and satisfy the first element of an excessive force claim. *See id.*

Next, Weaver must explain how the injuries arose "directly and only from a use of force that was clearly excessive." *Ontiveros*, 564 F.3d at 382 (quoting *Freeman*, 483 F.3d at 416). On its face, the "directly and only from" language may seem to limit Weaver. His complaint, after all, concedes that his two physical conditions and PTSD predated the officers' raid. Yet in § 1983 cases, the "eggshell-skull rule" applies, and state actors who unlawfully use excessive force take their victims as they find them. *Darden v. City of Fort Worth*, 880 F.3d 722, 728 (5th Cir. 2018). In that way, the aggravation of preexisting injuries may serve as valid bases for an excessive force claim. *Windham v. Harris County*, 875 F.3d 229, 242 (5th Cir. 2017) ("Our law is clear that the second [excessive force] prong does not 'preclude recovery for aggravation of preexisting injury caused by the use of excessive force.'") (quoting *Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996) (en banc)). At the same time, reasonable force is not made excessive "when [that] force aggravates (however severely) a pre-existing condition the extent of which would have been unknown to a reasonable officer at the time." *Id.* (quoting *Rodriguez v. Farrell*, 280 F.3d 1341, 1353 (11th Cir. 2002)).

---

[11] *Id.*

For that reason, plaintiffs with an aggravated preexisting injury must still show that the force that exacerbated their condition was clearly "excessive" and "unreasonable." *See id.*; *Dunn*, 79 F.3d at 403. To determine whether a plaintiff meets that standard, courts engage in an objective analysis that considers the specific circumstances of each case. *Brown*, 524 F. App'x at 79 ("Whether the amount of force used is clearly 'excessive' and 'unreasonable' depends on 'the facts and circumstances of each particular case.'") (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009)). This inquiry involves examining an officer's actions "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 80 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

On that basis, Weaver must plausibly allege that the officers applied clearly excessive and unreasonable force given the context of this specific search operation. Unfortunately, Weaver falls short of stating such a claim. This is mainly because his complaint requires more facts to justify any inferences of wrongdoing. To start, the complaint provides no explanation about what Weaver was doing when the warrant was executed, no description of the search's duration or how long the officers restrained Weaver, and no facts regarding communications, if any, between Weaver and the officers. Similarly, Weaver's allegations regarding the officers' conduct are vague. In each account of physical contact, Weaver does not distinguish between the acts of Kight, Tindall, and the two unnamed officers allegedly involved in the raid. Be it intentional or inadvertent, his pleadings leave several important questions unanswered. The complaint does not explain who initially restrained Weaver and whether the four officers acted in concert or

9

individually by "intentionally forcing" Weaver onto the ground, pressing their knees into his back, and cuffing his hands. For that reason, it is unknown whether Kight and Tindall were physically involved in these restraining measures, giving orders to the other officers, or standing idly by. Without further clarity, neither Kight nor Tindall can know the full scope of the allegations against them. That ambiguity also prevents this Court from independently analyzing Kight's and Tindall's conduct. *See Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007) (instructing courts to consider each defendant's culpability individually to determine if they deprived the plaintiff of a constitutional right).[12] In sum, the complaint's narrative has several gaps due to missing context, and the Court cannot fill the holes with guesswork.

His vague pleadings aside, Weaver's complaint also offers several unadorned accusations. For instance, Weaver claims the officers "were informed" of his nose, shoulder, and PTSD issues but supports this allegation with nothing more than a "belief."[13] Of course, an officer's knowledge of the victim's preexisting conditions is relevant when analyzing excessive force. If a victim informs an officer of his or her condition and that officer continues causing needless pain, such conduct could be considered an unconstitutional seizure. *Keele v. Leyva*, 69 F. App'x 659 (5th Cir. 2003) ("[O]nce [the

---

[12] Still, the Court *considers* the acts of Kight and Tindall separately. As the Fifth Circuit advised in *Meadours*, "[s]eparate consideration does not require courts to conduct a separate analysis for each officer in those cases where their actions are materially indistinguishable, it merely requires them to *consider* each officer's actions." 483 F.3d at 422 n.3.

[13] Weaver specifically alleges: "To the Plaintiff's belief, Agent Kight, Detective Tindall, and other law enforcement officers whose names are unknown had been informed of his injuries and recent surgery." Record Document 1 at 7.

victim] alerted [the officer] to his shoulder condition, the continued exertion of force in securing the restraint rose to the level of malice."). But Weaver does not allege that here. Indeed, Weaver's complaint does not explain how the officers were informed, when they were informed, who informed them, why they should have been informed, or any other basis supporting Weaver's allegation of the officer's state of mind. Though Weaver need not provide "detailed factual allegations," he must offer more than "unadorned" accusations. And in this case, Weaver's lack of factual context cannot justify an inference that the officers knew of his preexisting medical conditions. *Iqbal*, 556 U.S. at 686.[14]

Absent facts supporting such knowledge, Weaver fails to explain how any force used during the raid was excessive. Even if the complaint could be construed as alleging that Kight and Tindall personally used force against Weaver, the complaint's account of the events does not show how such force rose above routine restraint. When executing valid warrants, officers may secure the premises of their search and "detain the occupants . . . while a proper search is conducted." *Los Angeles County v. Rettele*, 550 U.S. 609, 613 (2007) (per curium) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). The

---

[14] The Supreme Court was presented with a similar scenario in *Iqbal* when it considered a plaintiff's allegation that defendants knew of and agreed to unconstitutional policies. 556 U.S. at 680. Justice Kennedy wrote for a majority and concluded that the plaintiff had not "nudged his claims of invidious discrimination across the line from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S at 570) (cleaned up). This was because the plaintiff offered "naked assertions devoid of further factual enhancement." *Id.* at 678 (cleaned up). So too here. Like the plaintiff in *Iqbal*, Weaver may not "plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Id.* at 687 (discussing Rule 9(b) state of mind pleading standards).

11

Supreme Court views an officer's right to do so[15] as an "incremental intrusion on [the detainee's] personal liberty." *Id.* at 613–14 (quoting *Summers*, 452 U.S. at 703). Such an intrusion is balanced against other considerations and interests, like "preventing flight in the event that incriminating evidence is found," "minimizing the risk of harm to the officers," and facilitating "the orderly completion of the search." *Id.* at 614 (quoting *Summers*, 452 U.S. at 702–03).

To be sure, officers make several objective considerations at the scene when executing warrants for contraband: The occupants or suspects of the dwelling could arm themselves with dangerous weapons, seek to escape, or attempt to destroy incriminating evidence. In these high-stress situations, "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id.* at 615 (quoting *Summers*, 452 U.S. at 702–03); *see also Bailey v. United States*, 568 U.S. 186, 195 (2013) (acknowledging "the far-reaching authority the police have when the detention is made at the scene of the search").

That said, officers do not enjoy the unfettered authority to engage in whatever conduct they please. For example, detention in this context may be unreasonable if an officer uses "excessive force or restraints that cause unnecessary pain or are imposed for a prolonged and unnecessary period of time." *Rettele*, 550 U.S. at 614. Here, Weaver does not claim that Kight, Tindall, or the other unnamed officers restrained him for a prolonged

---

[15] Though Weaver was not a suspect in the search conducted at his home, "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Summers*, 452 U.S. at 705 n.19).

12

period. And though Weaver alleges they inflicted pain, he does not state how the force that caused such pain was unnecessary, unreasonable, or excessive. He only says that the officers "intentionally forced" him "onto the floor," "pressed their knees" into his body, and "cuffed his hands behind his back."[16] Without further factual enhancement, these actions do not appear unusual, let alone unlawful. *Mason v. Lowndes Cnty. Sheriff's Dep't*, 106 F. App'x 203, 208 (5th Cir. 2004) (finding that officers' force was not excessive during a search, despite officers "slam[ing]" plaintiffs to the ground, placing them in handcuffs, and "put[ting]" a knee in their backs).

Above all, given an officer's objective concerns during a search operation, Weaver does not offer facts or context showing how Kight's, Tindall's, or the unnamed officers' actions were "clearly unreasonable." *Muehler*, 544 U.S. at 98–99 ("Inherent in *Summers*' authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention."). Though Weaver's complaint concludes otherwise, his accusation is the type of "naked assertion" that cannot survive dismissal. Indeed, Weaver's complaint is replete with similar conclusions that, in each instance, lack the necessary facts that make them plausible. With nothing more than these threadbare allegations, Weaver has failed to state a Fourth Amendment excessive force claim. Nevertheless, the Court will allow Weaver to fill the factual voids by filing an amended complaint.

---

[16] Record Document 1 at 6–7.

**b. Municipal Liability**

Having determined no § 1983 liability on the part of Kight or Tindall, the Court next turns to Weaver's claims against BSO. As with individual actors, plaintiffs may sue local government entities under § 1983. *See Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. 658, 694 (1978). These actions are called "*Monell* claims," in reference to the United States Supreme Court case bearing the same name. *Id.* Here, Weaver brings *Monell* claims against BSO, alleging that the Sherriff maintained policies that allowed BSO deputies to violate Weaver's constitutional rights. He also contends that BSO failed to train, discipline, or supervise its officers.[17]

To impose liability under any *Monell* theory, however, a plaintiff must plausibly allege some deprivation of a constitutional right. In this case, Weaver cannot establish *Monell* liability because, among other reasons, he has not adequately pled that any officers unlawfully seized him. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) (holding that a municipality cannot be liable "[i]f a person has suffered no constitutional injury at the hands of the individual police officer"). For this reason, Weaver has not effectively alleged that BSO is liable under *Monell*. But like his § 1983 claims

---

[17] Importantly, BSO is not an entity capable of being sued. But the Court will treat this claim as one against BSO Sheriff Julian Whittington in his official capacity. *Hudson v. City of New Orleans*, 174 F.3d 677, 680 (5th Cir. 1999) ("[F]or purposes of the Eleventh Amendment we do not generally distinguish between suits brought against an entity and suits brought against the entity's officers in their official capacity."); *see also Kentucky v. Graham*, 473 U.S. 159, 166, (1985) ("[A]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). BSO does not raise this issue in its motion to dismiss; it treats Weaver's claims against BSO as claims against Sheriff Whittington in his official capacity.

14

against Kight and Tindall, Weaver will have an opportunity to file an amended complaint that states a plausible claim for relief.

### III. State-Law Claims

Finally, Weaver brings state-law claims against Kight, Tindall, and BSO. He alleges that Kight and Tindall are liable for battery, assault, and negligence for their alleged use of excessive force. He also asserts that BSO, through the Sheriff, failed to train and supervise his employees. Unfortunately, Weaver's state-law claims suffer the same flaws as those alleged under § 1983: Weaver does not distinguish between the acts of Kight, Tindall, or the two unnamed officers involved in the raid, and it is unclear the extent of physical contact either Kight or Tindall had with Weaver. Because of Weaver's vague pleadings, and the reasons articulated above, Weaver's state law claims are also inadequately pled. As with his federal claims, however, Weaver may again assert these state causes of action against Kight, Tindall, or the BSO Sheriff in an amended complaint.

## CONCLUSION

Because Weaver has not pled viable claims for relief, the Court need not address Kight or Tindall's qualified immunity defense at this time. For the above reasons, LBI's motion is **GRANTED**.[18] Weaver's claims against LBI are **dismissed without prejudice** for lack of subject-matter jurisdiction. BSO's, Kight's, and Tindall's motions are **DENIED without prejudice to the right to refile**.[19] Weaver is granted leave to amend his remaining federal and state law claims and may file an amended complaint by **August**

---

[18] Record Document 19.
[19] Record Documents 24 & 27.

**30, 2023**. After the complaint is filed, Defendants may answer or refile a motion to dismiss within the requisite legal delays. If Weaver fails to file an amended complaint by the above deadline, this case will be dismissed and closed for his failure to prosecute.

**THUS DONE AND SIGNED** this 9th day of August, 2023.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE